IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TOMMY L. DEAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00340-O |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant United States of America's Motion for Summary Judgment (ECF No. 20). Having considered the motion, briefing, and applicable law, the Court finds that the United States of America's Motion for Summary Judgment should be and is hereby **GRANTED.** Accordingly, Plaintiff Tommy L. Dean's ("Dean") medical malpractice claims against the United States are hereby **DISMISSED with prejudice.**

BACKGROUND

This lawsuit concerns the medical treatment Dean has received while in federal custody at Federal Medical Center, Fort Worth ("FMC Fort Worth"). *See generally* ECF No. 1. When Dean began his incarceration at FMC Fort Worth, he was placed in multiple chronic care clinics to provide treatment for his ongoing chronic medical conditions, including diabetes, hypertension, lower back pain, and respiratory issues. *Id.* at ¶ 9. In his complaint, Dean generally contends that he has not received adequate treatment for his chronic conditions while at FMC Fort Worth, and that these conditions have thus become

more serious over time. *Id.* at ¶¶ 9–27. He specifically alleges that he "now suffers from a chronic kidney disease . . . suffers daily from the effects of the high blood pressure . . . also now suffers from having a pontine infract [*sic*]. . .[and] suffers daily with confusion, dizziness, loss of some function on his left side." *Id.* at ¶ 27.

During his initial health screenings at FMC Fort Worth, medical staff determined that Dean had multiple chronic health conditions, including Type 2 diabetes, hypertension, asthma, acid reflux and related respiratory issues, lower back pain, disk deterioration, and sciatica. Def.'s App. Supp. Mot. Summ. J ("App.") at 007-13, ECF No. 22. Dean's medical records reflect that he was seen multiple times by BOP medical staff and prescribed multiple medications between February 2018 (when he arrived at FMC Fort Worth) and October 2018 (when he filed his administrative tort claim), to address his various medical needs, in addition to his frequent blood pressure checks and blood glucose tests *Id*. at 007– 190.

Dean's relevant medical records reflect, among others, the following medical visits and treatment:

- February 13, 2018 – during Dean's first chronic care clinic visit at FMC Fort Worth, Dean received a detailed physical exam and multiple medications for his various medical conditions were renewed, including several different medications for his hypertension and several others for his diabetes. *Id.* at 014–19. The medical provider also requested a consultation for Dean with the in-house dietitian to address his diet given his high body mass index (BMI), and ordered that Dean's blood pressure be checked weekly for the following 90 days. *Id.* at 018.

- March 15, 2018 – Dean attended sick call, complaining of high blood pressure. *Id.* at 020–21. The medical provider evaluated Dean and took his vitals, including his blood pressure, and reminded him of the importance of taking his blood pressure medication. *Id.*

- April 11, 2018 – Dean participated in a weight management group counseling session, where they discussed how to make food choices while incarcerated and provided physical activity recommendations. *Id.* at 022.

- May 15, 2018 – Dean attended sick call, complaining about his blood pressure and some itching, and requesting a refill of his pain medication. *Id.* at 026–27. He was provided several medicated creams for his itching—which the medical provider indicated could also be improved by stabilizing Dean's blood glucose levels—and was provided with a refill of pain medication for his lower back pain. *Id.*

- June 8, 2018 – Dean attended sick call with concerns about his ongoing itching and his blood pressure. *Id.* at 032–34. The medical provider checked Dean's blood pressure and other vital signs; prescribed additional medication to treat his hypertension, diabetes, and itching; and ordered that Dean's weekly blood pressure checks continue for another 90 days. *Id.* at 033.

- June 28, 2018 – Dean was evaluated by FMC Fort Worth medical providers for an acute onset of dizziness. *Id.* at 037–38. After checking his blood pressure and performing a neurological evaluation, it appeared that Dean's dizziness was related

to dehydration. *Id.* Later that day, Dean's blood pressure was tested again, his blood glucose levels were checked, and several blood tests were run. *Id.* at 039.

- June 29, 2018 – Dean returned to the clinic, complaining that he still was dizzy and had a headache. *Id.* at 041–43. Although there was no indication of any neurological issues and an analysis of his urine indicated that he was dehydrated, Dean was sent to the JPS Hospital for further testing as his symptoms had persisted for a second day. *Id.* at 041–44.

- At the hospital, Dean indicated that he had intermittent dizziness and a severe "aching headache" over the past two days, but that he had no other symptoms. *Id.* at 045. His blood glucose levels were checked, and a CT scan, an MRI scan, and an MRA scan of his head and an MRA scan of his neck did not identify any issues. *Id.* at 047–58. As a result, Dean was discharged from the hospital on July 1, 2018, and when he was evaluated by FMC Fort Worth medical staff on his return, Dean's vital signs were stable and he informed FMC Fort Worth medical staff that his hospital tests were negative and that he no longer had a headache. *Id.* at 059–65. To continue monitoring Dean's blood pressure, FMC Fort Worth staff increased his blood pressure checks to three times per week. *Id.* at 065.

- July 1, 2018 – Dean returned to the clinic, complaining that his head was spinning. *Id.* at 066. He was given medication and monitored for 45 minutes with repeated checking of his vital signs. *Id.* at 066–67. Once his vital signs became stable and Dean indicated he felt better, he returned to his unit. *Id.* at 067.

4

- July 2, 2018 – Dean was re-evaluated by FMC Fort Worth medical practitioners after his episode the previous day. *Id.* at 069. The dosage for his blood pressure medications were increased, and his thrice-weekly blood pressure checks were extended. *Id.* at 069–72.
- July 4, 2018 – Dean returned to the clinic complaining of a headache and presenting with possible signs of a stroke. *Id.* at 073–79. Dean was sent back to the JPS Hospital for further testing. *Id.*

At the hospital, additional tests were performed on Dean, but neither an X-ray of his chest nor a CT scan of his head identified any abnormalities. *Id.* at 080–86. Ultimately, an MRI of his brain indicated that he had an acute pontine infarct (i.e., he had suffered a stroke). *Id.* at 087, 094. As part of his treatment, Dean was offered nutrition services, but refused any education about a low sodium diet. *Id.* at 090.

Dean remained at the JPS Hospital until July 12, 2018, when he was discharged to Kindred Hospital for additional recovery. *Id.* at 095–98. At the time of his discharge from the JPS Hospital, Dean was diagnosed with resolved diabetic ketoacidosis, pontine infarct, acute kidney injury/chronic kidney disease, an upper respiratory infection, Type 2 diabetes, hypertension, and obesity. *Id.* at 095.

At Kindred Hospital, Dean received physical therapy, occupational therapy, and medication management, including counseling on how to control his diabetes (which was uncontrolled due, in part, to his noncompliance with appropriate treatment). *Id.* at 101–05. FMC Fort Worth medical staff also communicated with the Kindred nursing team on

5

multiple occasions for updates regarding Dean's medical condition. *Id.* at 107–09. Dean was discharged back to FMC Fort Worth on August 10, 2018 *Id.* at 099.

Upon Dean's return to FMC Fort Worth on August 10, 2018, he was examined, his vital signs checked, he was prescribed multiple medications for his health concerns, and he received counseling regarding his diagnoses and ongoing diabetes issues. *Id.* at 110–18. He was also placed in specialized housing for continued monitoring and medical treatment, and was placed on multiple additional chronic care clinics related to his diabetes. *Id.* at 110, 125, 130. Dean was then examined by FMC Fort Worth medical staff on at least 27 separate occasions over the next three-and-a-half weeks, but he did not indicate that he had any pain or other complaints. *Id.* at 121–78. Dean was discharged to regular housing on September 4, 2018. *Id.* at 173, 177.

## LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine dispute as to any material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); FED. R. CIV. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id*. at 250.

## ANALYSIS

Dean's claims against the United States are governed by the Federal Tort Claims Act ("FTCA"). In the FTCA, Congress waived the United States' sovereign immunity for claims arising from certain torts committed by federal employees. *See* 28 U.S.C. §§ 1346(b)(1), 2671–2680; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008). As the Supreme Court has explained:

> The FTCA gives federal district courts jurisdiction over claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Sheridan v. United States*, 487 U.S. 392, 398 (1988) (quoting 28 U.S.C. § 1346(b)).

To determine the substantive legal rules applicable to an FTCA plaintiff's claim, the FTCA essentially borrows from state law in that it allows the United States to be held liable for allegedly tortious conduct "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Dean complains of alleged medical

7

malpractice occurring at a Federal Bureau of Prisons facilities in Texas, so the laws of Texas applies. *See Ayers v. United States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985) ("Under the [FTCA], liability for medical malpractice is controlled by state law.").

Texas "health care liability claims are subject to strict pleading and proof requirements." *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 561 (5th Cir. 2008) (citing TEX. CIV. PRAC. & REM. CODE §§ 74.001–.507). A plaintiff in a malpractice action "bears the burden of proving (1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). The plaintiff must establish the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard. *Id.* Unless the mode or form of treatment is a matter of common knowledge or is within the experience of a lay person, expert testimony is required to prove the applicable standard of care as well as its breach. *See id.* at 601–02; *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). Expert testimony is also required to show that the breach proximately caused the harm suffered. *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005). In short, subject to the narrow exception for matters of common knowledge, a plaintiff must produce expert testimony to meet his burden of proof on a malpractice claim. *Hannah*, 523 F.3d at 601; *see also Prindle v. United States*, No. 4:10-CV-54-A, 2011 WL 1869795, at *1–2 (N.D. Tex. May 13, 2011) (holding that expert testimony is required to establish the standard of care with respect to a FTCA claim that medical personnel were negligent in failing to diagnose and treat carcinoma); *Woods v. United States Gov't*, No. 3:08-CV-1670-D, 2010 WL 809601, at *3 (N.D. Tex.

Mar. 8, 2010) (holding that expert testimony is necessary to establish the standard of care with respect to an FTCA claim that a VA doctor committed medical malpractice by prescribing a cholesterol medication that interacted with the plaintiff's diabetes and liver disease).

In this case, Dean has not designated any experts, produced any anticipated expert testimony, or otherwise provided any information as required by the Court's Scheduling Order and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Further, Dean cannot show that the medical standard of care, and the issues of breach and causation regarding the treatment of the medical conditions detailed in his pleadings, are matters of common knowledge or within the general experience of a lay person, so as to excuse the requirement to provide evidence in the form of expert. Texas law only excuses the requirement for expert testimony in cases of truly rare, obvious forms of negligence. The Texas Supreme Court has given as examples "negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body." *Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex. 1990). Dean has not identified any such acts in this lawsuit.

Dean argues that FMC Fort Worth medical practitioners failed to provide him with medical treatment or find the underlying cause of his health issues, causing him to suffer from various medical conditions. App. at 26–27. However, Dean had multiple severe medical conditions upon his arrival at FMC Fort Worth. *Id.* at 007–13. Both Dean's own complaint and the materials submitted in the appendix demonstrate that while at FMC Fort Worth, Dean was seen and treated by medical personnel on numerous occasions between

February 2018 and early October 2018. *Id.* at 007–190. The records reflect that medical providers were responsive and tried a myriad of treatments to address Dean's health problems. *Id.* Additionally, although Dean claims that he was "abandoned" by medical staff after he returned to FMC Fort Worth from the hospital on August 10, 2018, Dean was seen on at least 27 separate occasions by FMC Fort Worth medical personnel between August 10, 2018 and September 4, 2018. *Id.* at 110–78. Moreover, his blood pressure was checked at least 58 separate times and his blood glucose levels were tested at least 114 times between August 10, 2018 and October 10, 2018. *Id.* at 179–90.

Dean's complaint is essentially a straight-forward regurgitation of his medical records, with no specific allegations of negligence or claims of how the alleged lack of treatment resulted in his long-term chronic conditions. *See* ECF No. 1. Dean's medical records show that he arrived at FMC Fort Worth in poor health, and that he frequently received treatment while at the facility for his medical needs. *Id.* at 007–190. He has failed to provide expert testimony to demonstrate how these actions constitute negligence by the United States.

The genuine issue before the Court is whether any action, or negligent inaction, on the part of the United States has caused Dean's alleged injuries. To answer that question, Dean was required to provide expert testimony, as the standard of care for treating a patient like Dean, with a myriad of medical diagnoses and numerous chronic medical conditions, is not a matter of common knowledge, nor is it within the experience of the layman. Dean's failure to provide an expert opinion means he cannot establish a genuine issue of material fact as to these issues, and therefore his FTCA claims fail. *See Hannah*, 523 F.3d at 601.

10

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 20) should be and is hereby **GRANTED.** Accordingly, Dean's claims against the United States are hereby **DISMISSED with prejudice.**

**SO ORDERED** on this **28th day** of **August, 2020**.

                                                   _____
                                                   Reed O'Connor
                                                   **UNITED STATES DISTRICT JUDGE**